STATE OF NORTH CAROLINA v. ELVIS RAY HUTCHINGS

No. COA99-776

(Filed 18 July 2000)

**1. Sexual Offenses— indictment—child victim—date of offenses—notice**

Even though defendant was not served with the bills of indictment in a first-degree sexual offense and taking indecent liberties with a minor case and defendant also alleges the State destroyed his alibi defense by offering evidence that the offenses occurred on dates different from those in the arrest warrants, defendant's

due process rights were not violated because: (1) the notice requirement of N.C.G.S. § 15A-630 is inapplicable where a defendant is represented by counsel as defendant was on the date of the return of the true bills of indictment in this case; (2) defendant and his counsel waived formal arraignment where they would have been informed of the allegations contained in the bills of indictment; (3) courts have adopted a policy of leniency toward any differences in the dates alleged in the indictments and those proven during trial in cases of sexual abuse against children; and (4) defendant did not rely solely upon his alibi defense since he also presented evidence contradicting the victim's account of the incidents.

2. **Criminal Law— motion for a mistrial—mention of word "polygraph"**

The trial court did not abuse its discretion in a first-degree sexual offense and taking indecent liberties with a minor case by denying defendant's motion for a mistrial when a police investigator mentioned the word "polygraph" during her testimony, because: (1) while the results of a polygraph test are inadmissible in North Carolina, not every reference to a polygraph test necessary results in prejudicial error; (2) the reference to the word "polygraph" in this case was neutral since the investigator did not mention the results of the test nor any information from which the jury could have inferred a result unfavorable to defendant; and (3) any possible prejudice was removed by the trial court's prompt and timely instruction to disregard the comment.

3. **Sexual Offenses— indictment—child victim—language of statute used—notice—double jeopardy**

Although defendant contends the indictments for two counts of first-degree sexual offense under N.C.G.S. § 14-27.4 and three counts of taking indecent liberties with a minor under N.C.G.S. § 14-202.1 do not sufficiently identify the offenses so as to protect him from multiple prosecutions and multiple punishments for the same offenses, the trial court did not commit plain error by accepting the verdicts and entering judgment upon them because: (1) each of the indictments used the language of the applicable statute; and (2) an indictment which charges a statutory offense by using the language of the statute is sufficient both to give a defendant adequate notice of the charge against him and to protect him from double jeopardy.

Appeal by defendant from judgments entered 8 January 1999 by Judge John M. Gardner in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 April 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Sarah Y. Meacham, for the State.*

*Allen C. Brotherton and John T. Hall for defendant-appellant.*

MARTIN, Judge.

Defendant appeals from judgments entered upon his convictions of two counts of first degree sexual offense in violation of G.S. § 14-27.4 and three counts of taking indecent liberties with a minor in violation of G.S. § 14-202.1. The State offered evidence at trial tending to show for approximately thirty days in July and August 1995, the victim, A.J., and her family were living with her maternal aunt in Charlotte. Her maternal uncle, defendant, and his wife lived in the same complex. In early August 1995, A.J., along with her brother, Tim, and her cousin, Daniel, spent the night at defendant's home. A.J. was then nine years of age. Defendant's wife was not at home. Tim and Daniel were apparently watching pornographic material on television and Tim began pretending that A.J. was performing oral sex on him. Defendant discovered the children engaged in this behavior, questioned them, and threatened to tell their mother. He told the children to go to bed and said he would think about it in the morning.

Later the same night, defendant woke A.J. and told her to come upstairs to watch television with him in his bedroom. While they were in bed, defendant exposed his penis and asked A.J. to suck it. He forced her head down and put his penis in her mouth. He told her not to tell her mother.

On a subsequent occasion when A.J. and Tim spent the night at defendant's home, defendant woke A.J. and told her to get in the shower. After she was in the shower, defendant came into the bathroom, undressed, and got into the shower with her. He rubbed soap on A.J.'s chest and on her genital area; he then had her wash his penis. After they got out of the shower, defendant performed cunnilingus on A.J. in the bedroom.

On another occasion while A.J. was at defendant's house, defendant and A.J. were sitting on a couch watching television. Defendant's wife was at home. Defendant took A.J.'s hand and placed it inside his

shorts and onto his penis. Defendant's wife came into the room and A.J. quickly removed her hand. Defendant's wife looked at them and told them it was time for lunch. After she left the room, defendant locked the door, exposed his penis, pulled A.J.'s clothing aside, and pressed his penis against A.J.'s vagina.

A.J. moved with her family to Minnesota sometime during the last two weeks of August 1995. In May 1996, A.J. told her mother about the events involving defendant.

Defendant testified on his own behalf and categorically denied any improper conduct with A.J. He testified that when he came downstairs, he observed A.J. performing oral sex on her brother. When he separated and scolded them, A.J. said that if he told her parents, she would tell them that he had made her perform oral sex on him. He also testified that his wife was at home the entire night.

Defendant's wife testified that defendant was continuously employed during the month of August 1995, and that he always left for work before she did and arrived home after she did. Defendant admitted that he had ended one job on 4 August and did not start a new job until 14 August, but offered evidence that he was never alone with A.J. during the period of time the offenses were said to have occurred.

On rebuttal, A.J.'s mother testified that defendant had been unemployed during part of August and stayed at home while his wife worked.

---

I.

[1] Defendant first contends his due process rights were violated because the warrants upon which he was arrested alleged the offenses had occurred on 15, 16, 17, and 18 August 1995, while the bills of indictment alleged the dates of the offenses as "on or about the month of August 1995." He contends that he was never served with the bills of indictment and prepared his defense based upon the dates alleged in the warrants. Though he concedes the indictments were sufficient to charge the offenses, he argues the change in dates prejudiced his ability to present an alibi defense. Acknowledging that he made no objection or motion at trial relating to the State's failure to serve him with the bills of indictment, defendant seeks review under the "plain error" standard. *See* N.C.R. App. P. 10(c)(4). Plain error entails an error of such magnitude "as to amount to a miscar-

riage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251, *cert. denied*, 485 U.S. 1036, 99 L.Ed.2d 912 (1988).

A valid bill of indictment is required to confer jurisdiction upon the court to try an accused for a felony. *State v. Snyder*, 343 N.C. 61, 468 S.E.2d 221 (1996). G.S. § 15A-630 requires that notice of the return of a true bill of indictment, including a copy of the bill and notice concerning discovery limitations, be given to a defendant *unless he is then represented by counsel*. The notice requirement of G.S. § 15A-630 is not applicable where a defendant is represented by counsel. *State v. Miller*, 42 N.C. App. 342, 256 S.E.2d 512 (1979). Defendant was represented by counsel of record on the date of the return of the true bills of indictment in this case. Moreover, defendant and his counsel waived formal arraignment, at which they would have been informed of the allegations contained in the bills of indictment.

An indictment is "constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subsequent prosecution for the same offense." *Snyder* at 65, 468 S.E.2d at 224. In cases alleging sexual abuse against children, courts have adopted a policy of leniency toward any differences in the dates alleged in the indictments and those proven during trial. *State v. Burton*, 114 N.C. App. 610, 442 S.E.2d 384 (1994).

Defendant argues, however, that his alibi defense was directed to the dates alleged in the warrants, that he was surprised by the unspecific date alleged in the bills of indictment, and that evidence the offenses occurred at times preceding the dates alleged in the warrants destroyed his alibi defense. Relying on *State v. Whittemore*, 255 N.C. 583, 122 S.E.2d 396 (1961), defendant contends that after he had established an alibi for the dates alleged in the warrants, the State offered rebuttal evidence that the offenses had occurred on different dates, violating his rights to due process. *Whittemore* is inapposite to this case; the rebuttal evidence complained of by defendant showed only that defendant was unemployed for approximately two weeks in August 1995, and that defendant had allowed A.J. and the other children to spend the night at his home three or four times on week nights during that time. However, defendant presented evidence that he was never alone with A.J. during any of the times during which the

State's evidence showed the offenses occurred. Moreover, defendant did not rely solely upon alibi; he presented evidence through his own testimony and the testimony of others directly contradicting A.J.'s account of the incidents. Thus, we find no error, plain or otherwise, with respect to defendant not having been served with the bills of indictment or with respect to the State offering evidence that the offenses occurred on dates different from those alleged in the arrest warrants. This assignment of error is overruled.

II.

[2] Defendant assigns error to the trial court's denial of his motion for a mistrial after Investigator Riveria of the Charlotte-Mecklenburg Police Department mentioned the word "polygraph" during her testimony. Defendant argues the officer's use of the word necessitated an objection by defense counsel and caused the jury to assume defendant had either refused such a test or the results were unfavorable to him.

A mistrial is required if "there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (1999). "A mistrial should be granted 'only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict,' and such ruling is within the trial court's sound discretion." *State v. Suggs*, 117 N.C. App. 654, 660, 453 S.E.2d 211, 215 (1995) (quoting *State v. Harris*, 323 N.C 112, 371 S.E.2d 689 (1988)). The trial court's ruling will not be reversed absent an abuse of discretion. *State v. Chavis*, 134 N.C. App. 546, 518 S.E.2d 241 (1999), *cert. denied*, —— N.C. ——, —— S.E.2d —— (4 May 2000).

While the results of a polygraph test are inadmissible in North Carolina, not every reference to a polygraph test necessarily results in prejudicial error. *State v. Gartlan*, 132 N.C. App. 272, 512 S.E.2d 74, *disc. review denied*, 350 N.C. 597, 537 S.E.2d 485 (1999). Here, Investigator Riveria was asked by the prosecutor to describe the demeanor of defendant during the interview. The investigator responded:

He came in cordial enough, but then during the 15, 20 minutes we talked, tops 20 minutes, he became fidgety. He played with his sunglasses. He even put them on once and he raised his voice once and told me—while we talked, I asked him a question and he

raised his voice. And I guess I wasn't supposed to talk about the polygraph, but—

Defendant's counsel made a timely objection which was sustained. Defendant's motion to strike was allowed and the trial court instructed the jury: "The jury is to disregard the last comment of the witness and not to consider that at all."

The investigator's reference to the word "polygraph" was neutral; there was no mention of the results of the test nor any information from which the jury could have inferred a result unfavorable to defendant. Any possible prejudice was removed by the trial court's prompt and timely instruction, thus the investigator's mention of the word "polygraph" was not such a "serious impropriety" as to render it impossible for defendant to receive a fair and impartial verdict. The trial court did not abuse its discretion in denying the defendant's motion for a mistrial. This assignment of error is overruled.

III.

[3] Finally, defendant argues the trial court committed plain error by accepting the verdicts and entering judgment upon them because the indictments do not sufficiently identify the offenses so as protect him from multiple prosecutions and multiple punishments for the same offenses. We disagree.

In order to sustain a conviction, an indictment needs "to give defendant sufficient notice of the charge against him, to enable him to prepare his defense, and to raise the bar of double jeopardy in the event he is again brought to trial for the same offense." *State v. Ingram*, 20 N.C. App. 464, 466, 201 S.E.2d 532, 534, *appeal after remand*, 23 N.C. App. 186, 208 S.E.2d 519 (1974). Each of the indictments in the present case used the language of the applicable statute to charge the offense. It is established law that an indictment need not allege the evidentiary basis for the charge; an indictment which charges a statutory offense by using the language of the statute is sufficient both to give a defendant adequate notice of the charge against him and to protect him from double jeopardy. *State v. Miller*, 137 N.C. App. 450, 528 S.E.2d 626 (2000).

Defendant's remaining assignment of error, which is neither presented nor discussed in defendant's brief, is deemed abandoned. N.C.R. App. P. 28(a), 28(b)(5).

Defendant received a fair trial, free from prejudicial error.

No error.

Judges LEWIS and WALKER concur.