STATE OF NORTH CAROLINA v. MARLON RIO MASSEY

No. COA04-1443

(Filed 1 November 2005)

## 1. Sexual Offenses— short-form indictments—minor victim—sufficiency of charges

The short-form indictments used to charge defendant with multiple counts of first-degree sexual offense with a child under thirteen, multiple counts of felonious sexual act with a minor over whom he assumed the position of parent residing in the home, and multiple counts of indecent liberties were not defective, because: (1) the first-degree sex offense indictments match the form required by N.C.G.S. § 15-144.2(b); (2) the sex offense in a parental role indictments match the language of N.C.G.S. § 14-27.7; (3) the indecent liberties indictments match the wording of N.C.G.S. § 14-202.1; and (4) the indictments were sufficient to inform defendant of the charges against him, and defendant has not shown deprivation of his ability to prepare a defense due to a lack of specificity in the indictments.

## 2. Indictment and Information— variance between allegation and proof as to time—child sex abuse—statute of limitations not involved

The trial court did not improperly instruct the jury on theories of guilt not alleged in indictments for sexual offenses against a child when the date and time periods in the instructions were not specified in the indictments because: (1) the fact that a crime was committed on a date other than that which is alleged in the indictment is not a fatal variance between allegation and proof where no statute of limitations is involved such as in child sex abuse cases; and (2) the trial court did not instruct on a different theory or under a different statute, and the indictments gave defendant sufficient notice of the charges against him.

## 3. Sexual Offenses— multiple crimes—instructions—elements

The trial court did not commit plain error in a prosecution for sexual offenses by a person in a parental role and indecent liberties by failing to specifically instruct the jury on the elements of each offense on each date alleged where the court gave the pattern jury instructions for the alleged sexual offenses by a person in a parental role and distinguished those counts by assigning

STATE v. MASSEY

[174 N.C. App. 216 (2005)]

them different locations according to the victim's testimony, and the court also gave the pattern jury instructions for indecent liberties and then repeatedly instructed the jury that it had to find "separate and distinct acts" for the various counts.

**4. Constitutional Law— right to unanimous verdict—multiple sexual offenses with child**

Defendant's right to a unanimous verdict was not violated with respect to convictions on five counts of first-degree sexual offense with a child under thirteen where the instructions and verdict sheets contained specific references to the date, act and location of each of the alleged acts, and it was possible from those references to determine which of defendant's five convictions correspond to the acts testified to at trial.

**5. Constitutional Law— right to unanimous verdict—multiple sexual offenses in parental role**

Defendant's right to a unanimous verdict was not violated with respect to convictions on two of the ten counts of sexual offense by a person in a parental role where there was sufficient evidence to support convictions for acts occurring in two different locations, and the trial court's disjunctive instruction allowed different sexual acts to be considered as alternate means by which the State proved a single offense. However, defendant's right to a unanimous verdict was denied with respect to convictions on eight counts of sexual offense by a person in a parental role where it is impossible to relate the charges in the verdict sheets to specific instances because the verdict sheets did not associate an offense with a given incident.

**6. Constitutional Law— right to unanimous verdict—multiple indecent liberties offenses**

Defendant's right to a unanimous verdict was denied with respect to convictions on four counts of indecent liberties, even though defendant was charged with only four counts of indecent liberties, where the State presented evidence of more than four incidents of indecent liberties; although the trial court instructed the jury to consider each count a separate and distinct act, the instructions made no further attempt to distinguish among the counts; and it is therefore impossible to determine whether each juror had in mind the same four incidents when voting to convict defendant.

**7. Sentencing— aggravating factors—failure to submit to jury—*Blakely* error**

The trial court erred by imposing aggravated sentences on defendant for multiple counts of first-degree sexual offense with a child under thirteen, multiple counts of felonious sexual acts with a minor over whom he assumed the position of parent residing in the home, and multiple counts of indecent liberties by finding as an aggravating factor that defendant took advantage of a position of trust or confidence to commit the offense without submitting this finding to the jury, and defendant is entitled to a new sentencing hearing.

**8. Sentencing— aggravating factor—consolidated judgment— most serious offense**

The trial court did not improperly aggravate defendant's sentence by an aggravating factor based upon the same evidence used to prove an element of sexual offense by a person in a parental role where defendant's convictions for that offense were consolidated for judgment with convictions for first-degree sexual offense with a child under thirteen; aggravating factors applied to a sentence for a consolidated judgment apply only to the most serious offense in that judgment, which was the first-degree sexual offense; and defendant's sentence was thus not derived from sexual offense by a person in a parental role because it was not the most serious offense in the consolidated judgment.

Judge BRYANT concurring in part and dissenting in part.

Appeal by defendant from judgments entered 22 April 2004 by Judge William Z. Wood, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 22 August 2005.

*Roy A. Cooper, III, Attorney General, by Anne M. Middleton, Assistant Attorney General, for the State.*

*Stubbs, Cole, Breedlove, Prentis & Biggs, PLLC, by C. Scott Holmes, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant was convicted of five counts of first-degree sexual offense with a child under 13, ten counts of felonious sexual act with a minor over whom he assumed the position of parent residing in the

home, and four counts of indecent liberties. These verdicts were consolidated for sentencing, and defendant received five consecutive sentences of a minimum of 275 months and a maximum of 339 months. After careful review of the record, we find no error as to defendant's conviction of five counts of first-degree sexual offense and two counts of felonious sexual act with a minor. However, we must reverse his remaining convictions of felonious sexual act with a minor and indecent liberties convictions, and remand the case for a new trial.

The State presented evidence at trial which tended to show the following: in July 2000, defendant moved in with H.J., her mother Rebecca, and half sister A.T. H.J. was six years old at that time. It was agreed that defendant would be treated as a stepfather. H.J. testified that when she was eight, in September 2002, shortly after the birth of her brother, defendant made her pull off her clothes and get in her mother's bed with him. He would turn her on her side and "stick his thing in [her] backside," and that this happened about twenty times. She testified that by "his thing" she meant defendant's penis.

She further testified that he would touch her breasts, that before he put "his thing" in her "backside" he would lick his fingers and touch her "backside," and that the same thing would happen in the living room as well as the bedroom. H.J. stated that he asked her to lick his penis, but she refused, and that he licked her breasts and on her "front part." She also explained that sometimes these acts also occurred in the living room on Sunday, when the race would be on television. H.J. testified that defendant licked her twice, but that it was not at the same time he was putting "his thing" in her "backside", but afterwards. She explained that her mom found out on 5 June 2003 when A.T. saw defendant "holding on to her", and told Rebecca, who then talked to H.J. Subsequently, H.J. talked to the sheriffs and went to the hospital for an examination.

Sara Ehlers Dentel, a forensic nurse examiner, testified that she completed a rape kit on H.J. and took photographs of H.J's vaginal and rectal areas. During her examination, she found what appeared to be bruising and ulcerations inside H.J's rectum consistent with H.J.'s statements.

Detective Arnette Miles testified that she interviewed H.J. regarding the allegations, and H.J. told her that defendant put "his thing" in her "backside" in the master bedroom; that he had licked her vagina twice; that, sometimes prior to placing "his thing" in her "butt," he

would spit on his hands and digitally penetrate her; and that on several occasions defendant also did this in the living room on the couch. After taking this statement, Detective Miles testified that she traveled with two other officers to H.J.'s home, where they questioned defendant. After initially denying the allegations, they again asked defendant "if he did it," and defendant began to cry and nodded his head affirmatively.

Miles testified that defendant gave a statement that prior to 5 June 2003, he had sodomized H.J. at least six times. Miles explained that defendant stated that he had licked H.J. two or three times, that H.J. had licked his penis, but he could not remember how many times, and that sometimes this had taken place in the master bedroom and sometimes in the living room on the couch.

Agent Suzi Barker, forensic biologist with the State Bureau of Investigation, testified there was semen found on the panties worn by H.J. on 5 June 2003. Agent Brenda Bisset, a forensic DNA examiner, testified that the DNA profile from this semen matched the DNA profile obtained from defendant. Defendant offered no evidence.

---

On appeal, defendant brings forward assignments of error regarding 1) the sufficiency of the short form indictments; 2) the trial court's failure to completely instruct the jury concerning several of the counts in the indictments; 3) the trial court's instructions were based on theories not alleged in the indictments; 4) the deprivation of his constitutional right to jury unanimity due to jury instructions that resulted in ambiguous verdicts; and 5) the violation of his constitutional right to a jury regarding his sentencing in the aggravated range. We address each of these arguments in turn.

I.

[1] Defendant contends the short-form indictments returned in these cases were defective because they failed to allege all the essential elements of the charges. This argument is without merit. Indictments must be sufficient to put defendant on notice of the charges. *State v. Kennedy*, 320 N.C. 20, 24, 357 S.E.2d 359, 362 (1987). "An indictment is constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subsequent prosecution for the same offense." *State v. McGriff*, 151 N.C. App. 631, 634, 566 S.E.2d 776, 778 (2002) (internal citations omitted).

In child sex abuse cases, due to the uncertainty of children regarding dates and times, courts are lenient regarding differences between alleged dates and those presented at trial. *Id.* at 635, 566 S.E.2d at 779. To show prejudice from such leniency, we require that defendants show a deprivation of their defense due to lack of specificity. *Id.* Moreover, even though short-form indictments do not list all of the elements of a particular crime, their use as charging instruments for statutory sex offense has been authorized by the legislature. *State v. Miller*, 159 N.C. App. 608, 613, 583 S.E.2d 620, 623 (2003), *aff'd*, 358 N.C. 133, 591 S.E.2d 520 (2004). "In general, an indictment couched in the language of the statute is sufficient to charge the statutory offense," and "need only allege the ultimate facts constituting the elements of the criminal offense and that evidentiary matters need not be alleged." *State v. Blackmon*, 130 N.C. App. 692, 699, 507 S.E.2d 42, 46, *cert. denied*, 349 N.C. 531, 526 S.E.2d 470 (1998).

Here, the first-degree sex offense indictments match the form required by N.C. Gen. Stat. § 15-144.2(b); the sex offense in a parental role indictments match the language of N.C. Gen. Stat. § 14-27.7; and the indecent liberties indictments match the wording of N.C. Gen. Stat. § 14-202.1. Therefore, they are sufficient to inform the defendant of the charges against him. In addition, defendant has not shown deprivation of his ability to prepare a defense due to a lack of specificity in the indictments. Accordingly, this assignment of error is overruled.

## II.

[2] Defendant also maintains the trial court erred by instructing jury on theories of guilt not alleged in the indictment because the date and time periods in the jury instructions were not specified in the indictments. We disagree.

The fact that a crime was committed on a date other than that which is alleged in the indictment "is not fatal" and "a variance between allegation and proof as to time is not material where no statute of limitations is involved," *Blackmon*, 130 N.C. App. at 697, 507 S.E.2d at 45 (internal citations omitted) (date range between 1 January and 12 September 1994), as long as the defendant has an opportunity to present an adequate defense. *McGriff*, 151 N.C. App. at 637, 566 S.E.2d at 780 (date between 1 December 1998 and 27 January 1999 not prejudicial).

Here, the trial court did not instruct on a different theory, or under a different statute. *Cf. State v. Lawrence,* 170 N.C. App. 200, 206, 612 S.E.2d 678, 683 (2005), *temp. stay allowed,* 359 N.C. 640, 615 S.E.2d 662 (2005) (*Lawrence II,* a case unrelated to *Lawrence I*) (instruction based on theory that sex offense was against a victim under the age of 13, but indictments alleged theory of forcible offense); *State v. Bowen,* 139 N.C. App. 18, 24, 533 S.E.2d 248, 252 (2000) (holding that "the trial judge, by his failure to submit the proper jury instructions for the three counts of first degree (forcible) sexual offense against defendant, effectively dismissed those charges"). Since we have already determined that the indictments were sufficient to put defendant on notice of the charges against him, and since the lack of specificity as to time when dealing with child sex abuse cases is not fatal, this argument is overruled. *See, e.g., Blackmon,* 130 N.C. App. at 697, 507 S.E.2d at 46.

## III.

**[3]** Defendant next argues that the trial court effectively dismissed the indictments by failing to completely and specifically instruct the jury as to certain counts. He maintains that the trial court failed to instruct the jury on the necessary elements for sex offense against a minor by a person in a parental role (counts two and three in 03 CRS 56202), and on the necessary elements of indecent liberties (count three in 03 CRS 56205 and count two in 03 CRS 56207).

"[A] trial judge who instructs on a different charge than the one defendant is indicted on, has essentially dismissed the indictment." *Bowen,* 139 N.C. App. at 26, 533 S.E.2d at 253 (instructing the jury on statutory sex offense when defendant indicted for forcible first-degree sex offense). The trial court, however, does not have to instruct on each count separately. *See State v. Parker,* 119 N.C. App. 328, 339, 459 S.E.2d 9, 15 (1995) (holding that trial court did not err in refusing to charge the jury separately on each count of the indictments, because considered contextually, the instructions made it clear that each charge should be considered separately). A "trial court's failure to specifically instruct the jury as to the elements of each offense on each date . . . [is] not plain error." *State v. Evans,* 162 N.C. App. 540, 544, 591 S.E.2d 564, 566 (2004).

Defendant did not object to the jury instructions at trial, and so alleges plain error. When a defendant alleges plain error, we must examine the whole record to determine if the error is so basic and prejudicial that it amounts to fundamental error, or whether the jury's

finding of guilt was influenced by the mistaken instruction. *State v. Carrigan,* 161 N.C. App. 256, 262-63, 589 S.E.2d 134, 139 (2003), *disc. review denied,* 358 N.C. 237, 593 S.E.2d 784 (2004).

For the first count complained of by defendant, the trial court instructed the jury following the pattern jury instruction for "feloniously engaging in a sexual act, anal intercourse, in the master bedroom with a minor, over whom the Defendant had assumed a position of a parent residing in the home." After reciting the pattern charge as to count one, locating the acts in the master bedroom, the trial court stated:

> As to count two, . . . the State must prove from the evidence beyond a reasonable doubt that the sexual act took place in the living room. If the State fails to prove that it took place in the living room then you must find the Defendant not guilty. As to count three of this charge, the State again has the burden of proving that this sexual act took place in the master bedroom. If the State fails to prove this from the evidence beyond a reasonable doubt then you must find the Defendant not guilty.

Regarding three of the counts of indecent liberties, counts two and three of 03 CRS 56205 and count two of 03 CRS 56207, the trial court again gave the pattern jury instruction, and then instructed:

> As to count three of case No. 03 CRS 56205, again, you must determine whether or not the Defendant is guilty of taking indecent liberties with a child. You must consider this as a separate and distinct act, separate from the other charges in this case. I've defined . . . the charge of taking indecent liberties with a child and . . . if you find that the State has proved this [sic] these three things from the evidence beyond a reasonable doubt then it would be your duty to return a verdict of guilty of this count three of case No. 03 CRS 56205. However, . . . if you have a reasonable doubt as to one or more of those things then it would be your duty to return a verdict of not guilty. But the law is the same, I'm not going to go through it again as to that.

Concerning 03 CRS 56207, counts one and two, the trial court instructed that each count must be considered a separate and distinct act and informed the jury that they would "also consider the same law as to count two. I'm not going to go through the definition of an indecent liberty again, you have heard it twice, but apply that law to count two, decide that as a separate and distinct act." Moreover, before the

final mandate, the trial court noted that the State bore the burden of proof, and "in an abundance of caution," reiterated the importance of considering each count of each case as a separate and distinct act.

The trial court did not commit plain error by refusing to specifically reiterate the instructions for each factually similar offense on a different date. *Evans*, 162 N.C. App. at 544, 591 S.E.2d at 566. Nor do we believe that had the trial court specifically instructed the jury on each count, the jurors would have reached a different result. *Carrigan*, 161 N.C. App. at 263, 589 S.E.2d at 139. The trial court gave the pattern jury instructions for the alleged sex offenses in a parental role, and distinguished those counts by assigning them different locations, according to H.J.'s testimony. The trial court also gave the pattern jury instructions for indecent liberties and then repeatedly instructed the jury that it had to find "separate and distinct act[s]" for the various counts. Any error in these instructions does not rise to the level of plain error, and this assignment of error is overruled.

IV.

Defendant next argues that his right to a unanimous verdict was violated because it is unclear which criminal offenses the jury believed he committed. There is some merit to these contentions. Under the North Carolina Constitution, "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. art. 1, § 24; N.C. Gen. Stat. § 15A-1237(b) (2003). Jury instructions that allow the jury to convict a defendant without requiring unanimity on the issue of which criminal offense the defendant committed may compromise the right to a unanimous verdict. *State v. Petty*, 132 N.C. App. 453, 460, 512 S.E.2d 428, 433, *disc. review denied*, 350 N.C. 598, 537 S.E.2d 490 (1999). "[A] disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, either of which is itself a separate offense, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense." *State v. Lyons*, 330 N.C. 298, 302-03, 412 S.E.2d 308, 312 (1991). When the defendant presents a question of jury unanimity, we examine the evidence, the charge, the instructions and the verdict "to determine whether any ambiguity as to unanimity has been removed." *Petty*, 132 N.C. App. at 461-62, 512 S.E.2d at 434.

There is "no violation of a defendant's right to a unanimous verdict unless the evidence reveals a greater number of separate criminal offenses than the number of charges submitted to the jury." *State*

*v. Lawrence*, 165 N.C. App. 548, 560, 599 S.E.2d 87, 96, *temp. stay allowed*, 359 N.C. 73, 603 S.E.2d 885 (2004), *disc. review allowed*, 359 N.C. 413, 612 S.E.2d 634 (2005) (*Lawrence I*) ("neither the indictments, verdict sheets, nor the trial court's instructions, associated a given verdict sheet or indictment with any particular incident"); *State v. Wiggins*, 161 N.C. App. 583, 592-93, 589 S.E.2d 402, 409 (2003), *disc. review denied*, 358 N.C. 241, 594 S.E.2d 34 (2004) (no unanimity problem where jury instructions and verdict sheets differentiated by applicable indictment number). Furthermore, our Supreme Court has found no error where "the trial judge submitted a specific instruction with respect to unanimity of verdict as to each indictment and also assigned correlating specific alleged acts of sexual offense to each indictment." *Kennedy*, 320 N.C. at 25, 357 S.E.2d at 362.

[4] Defendant was convicted of five counts of first-degree sexual offense with a child under thirteen, ten counts of felonious sexual act with a minor over whom he assumed the position of a parent residing in the home, and four counts of indecent liberties. We begin by addressing the charges of first-degree sexual offense. First-degree sexual offense is "a sexual act: (1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]" N.C. Gen. Stat. § 14-27.4(a)(1) (2003). A "sexual act" includes "cunnilingus . . . [and] the penetration, however slight, by any object into the genital or anal opening of another person's body[.]" *Id.* § 14-27.1(4).

An examination of the record reveals that the jury instructions and verdicts contain specific references to the date, act, and location of the alleged acts. From these references, it is possible to determine which of defendant's five convictions correspond to the possible acts testified to at trial.

In 03 CRS 56199, defendant was found guilty of three counts of first-degree sexual offense. The verdict sheet reflects that the first conviction was for acts occurring "on June 5, 2003" and the jury instruction includes both this date and the specific act—anal intercourse. This instruction was supported by trial testimony that on 5 June 2003, H.J.'s sister saw defendant "holding on" to H.J. The second conviction was for a first-degree sexual offense "in the living room between 9-4-02 and 6-4-03" and the jury instructions also include this date range, location, and specific sexual act. H.J. testified that the many of the possible acts had occurred in the living room. The third count was identical to the second except that the location on the verdict sheet and in the instructions was the master bedroom; there was

corresponding testimony from H.J. that some offenses had occurred in the bedroom.

In 03 CRS 56200, defendant was found guilty of first-degree sexual offense by cunnilingus and the trial judge properly referenced this in his instructions. H.J. testified that defendant licked her on her "front part," and defendant himself stated that he had licked H.J. on several occasions. The risk that the jury would confuse this charge of first-degree sexual assault by cunnilingus with the previous counts was obviated by the trial court's instructions that as to the previous incidents, "a sexual act means anal intercourse." Furthermore, H.J. testified that defendant licked her at a different time than defendant sodomized her.

Finally, defendant was found guilty of first-degree sexual offense "in the living room while the Defendant was watching the race." Both the jury instructions and H.J.'s testimony reference the race on television at the time of this offense. Again, this count is distinguishable from the earlier count of first-degree sexual offense "in the living room." H.J. testified to multiple acts, some of which occurred in the living room. Defendant also stated that the alleged acts sometimes took place in the living room. The testimony and jury instructions indicate multiple acts in the living room, one of which took place while a race was on television.

In sum, the charges in the verdict sheet can be related to specific acts, each of which was the basis for a charge of first-degree sexual offense. These instances are not alleged to have occurred within the same "transaction" but, rather, were separate and distinct acts occurring at different times and places, each of which forms "the basis for charging the defendant with a separate count of first-degree sexual offense." *Lawrence II*, 170 N.C. App. at 210, 612 S.E.2d at 685. Additionally, the trial court's instructions limited the jury's consideration of the first-degree sexual offenses by date, act, and location as reflected by the testimony and verdict sheets. Given the longstanding presumption that a jury follows the instructions given by the trial court, *see, e.g., State v. Wiley*, 355 N.C. 592, 637, 565 S.E.2d 22, 52 (2002), *cert. denied*, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003), and based on the foregoing analysis of the verdict sheets, jury instructions, and testimony, we can determine that the jury unanimously convicted defendant of particular crimes. *Kennedy*, 320 N.C. at 25, 357 S.E.2d at 362. We affirm defendant's convictions for five counts of first-degree sexual offense.

**[5]** Defendant was also convicted of ten counts of felonious sexual act with a minor over whom he assumed the position of parent residing in the home in violation of N.C. Gen. Stat. § 14-27.7(a). Since the nature of the verdict and the charge given to the jury on these counts differed significantly from the verdict and instructions pertaining to first degree sexual offense, we must grant defendant a new trial upon eight of these charges because, after examining the verdict sheets and the instructions, we cannot determine which specific acts each juror had in mind when voting to convict defendant of sex offense in a parental role. *Lawrence I*, 165 N.C. App. at 563, 599 S.E.2d at 98.

The proffered testimony was in the form of "generic testimony," and "there is no apparent statutory or common law authority that would permit the return of more than one indictment based on the same generic testimony." *Lawrence I*, 165 N.C. App. at 557, 599 S.E.2d at 94; *see also State v. Bates*, 172 N.C. App. 27, 35, 616 S.E.2d 280, 287 (2005) *temp. stay allowed*, 360 N.C. 67 —— S.E.2d ——, (2005) (generic testimony was sufficient to support a single additional charge and conviction of first-degree sexual offense); *Wiggins*, 161 N.C. App. at 593, 589 S.E.2d at 409 (upholding a conviction for second-degree rape based on generic testimony).

In this case, there was generic testimony about alleged incidents in the bedroom and living room, by anal intercourse and by cunnilingus. For example, H.J. testified about alleged acts that "would happen" and things that defendant "would" do "sometimes," occurring in the living room and in the bedroom, and defendant made similar statements. This testimony is sufficient to support an additional charge and conviction of feloniously engaging in a sexual act in the master bedroom with a minor over whom defendant had assumed the position of a parent residing in the home by both cunnilingus and anal intercourse (count one of 03 CRS 56203), and a similar additional conviction for the same acts in the living room (count one of 03 CRS 56205). There is no issue as to unanimity because the disjunctive instruction allows these acts to be considered as alternate means by which the State proved the single criminal offenses. *Lawrence I*, 165 N.C. App. at 557, 599 S.E.2d at 94-95.

As to the eight remaining counts (three in 03 CRS 56202, two in 03 CRS 56203, and three in CRS 56204) where the jury found the defendant guilty of identical instances of anal intercourse in the master bedroom or living room, it is impossible to relate the charges in the verdict sheets to specific instances because the verdict sheets did not associate an offense with a given incident. *Id.* at 563, 599 S.E.2d

at 98. Since we cannot determine whether the jury unanimously convicted defendant based on specific acts, we must grant a new trial upon the remaining eight counts of felonious sexual act with a minor.

[6] Finally, we examine defendant's convictions for indecent liberties. In 03 CRS 56205 and 03 CRS 56207, defendant was convicted of four counts of taking indecent liberties with a child.

> A person is guilty of taking indecent liberties with children if, . . . he either:
>
>> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child . . . for the purpose of arousing or gratifying sexual desire; or
>>
>> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child . . .

N.C. Gen. Stat. § 14-202.1(a) (2003). It is well settled that indecent liberties do not merge with or are not lesser included offenses of sexual offense. *Lawrence II*, 170 N.C. App. at 214, 612 S.E.2d at 687. Furthermore, "evidence of one incident of rape or sexual offense may support a conviction for indecent liberties as well." *Id.* When there is evidence of a greater number of offenses than there are charges against a defendant, concerns over unanimity arise, *Lawrence I*, 165 N.C. App. at 558, 599 S.E.2d at 94, because there is a risk that the jury will return guilty verdicts without agreeing upon a defendant's guilt regarding particular criminal acts. *State v. Holden*, 160 N.C. App. 503, 507, 586 S.E.2d 513, 517 (2003), *aff'd without precedential value*, 359 N.C. 60, 602 S.E.2d 360 (2004).

Based on the record in this case, we are unable to ascertain which particular evidence was the basis for the jury's verdicts because, although defendant was only charged with four counts of indecent liberties, the State presented evidence of more than four incidents of indecent liberties. Defendant's own statement indicated that he had sodomized H.J. at least six times, that he licked her two or three times, and that H.J. had licked his penis an unknown number of times, and there was evidence of fondling and digital penetration as well. Although the trial judge instructed the jury to consider each count of indecent liberties a separate and distinct act, the instructions made no further attempts to distinguish among the counts. *Holden*, 160 N.C. App. at 508, 586 S.E.2d at 517. It is therefore impossible for us to determine whether each juror had in mind the same four incidents

when voting to convict defendant. The risk of ambiguity as to unanimity has not been removed. *See Petty*, 132 N.C. App. at 461-62, 512 S.E.2d at 434 (distinguishing between disparate crimes and alternate ways of showing the commission of a crime). Since defendant's right to a unanimous verdict has been jeopardized, we must grant a new trial upon the four convictions of indecent liberties as well.

V.

**[7]** Defendant's final argument is that the trial court erroneously found a factor in aggravation, violating his right to a jury trial pursuant to *Blakely v. Washington*, 542 U.S. ——, 159 L. Ed. 2d 403 (2004). We agree. The trial court found as an aggravating factor that "defendant took advantage of a position of trust or confidence to commit the offense." A defendant's Sixth Amendment right to a jury trial is violated by judicial findings of such aggravating factors pursuant to North Carolina's Structured Sentencing Act, specifically N.C. Gen. Stat. § 15A-1340.16(a), (b), and (c). *State v. Lewis*, 172 N.C. App. 97, 107, 616 S.E.2d 1, 7-8 (2005). "Our North Carolina Supreme Court applied the rule in *Blakely* to our structured sentencing scheme and determined that "statutory maximum" is equivalent to "presumptive range." *Id*. Since a jury did not find the aggravating factor beyond a reasonable doubt, this constitutes structural error, reversible *per se*, under *State v. Allen*, 359 N.C. 425, 444, 615 S.E.2d 256, 267 (2005), and we must grant the defendant a new sentencing hearing.

**[8]** Defendant further maintains that the trial court erroneously aggravated his sentence because the aggravating factor was based on the same evidence used to prove an element of the offense of sexual activity in a parental role. This argument is misplaced. Defendant's sexual offense by a person in a parental role convictions were consolidated for judgment with the first-degree sex offense charges. Our Supreme Court held in *State v. Tucker*, that "the trial judge is required by the Structured Sentencing Act to enter judgment on a sentence for the most serious offense in a consolidated judgment, aggravating factors applied to the sentence for a consolidated judgment will only apply to the most serious offense in that judgment." 357 N.C. 633, 637, 588 S.E.2d 853, 855 (2003).

Here, as in *Tucker*, the defendant's sentence was not derived from sexual offense by a person in a parental role because it was not the most serious offense in the consolidated judgment. *Id*. at 639, 588 S.E.2d at 857. Therefore, it was not erroneous to apply the aggravating factors to the consolidated judgment.

**STATE v. MASSEY**

[174 N.C. App. 216 (2005)]

03 CRS 56199—First-Degree Sexual Offense—No error in the trial, remanded for a new sentencing hearing.

03 CRS 56199—First-Degree Sexual Offense—No error in the trial, remanded for a new sentencing hearing.

03 CRS 56199—First-Degree Sexual Offense—No error in the trial, remanded for a new sentencing hearing.

03 CRS 56200—First-Degree Sexual Offense—No error in the trial, remanded for a new sentencing hearing.

03 CRS 56200—First-Degree Sexual Offense—No error in the trial, remanded for a new sentencing hearing.

03 CRS 56203—Sex Offense—Parental Role—No error in the trial, remanded for a new sentencing hearing.

03 CRS 56205—Sex Offense—Parental Role—No error in the trial, remanded for a new sentencing hearing.

03 CRS 56202—Sex Offense—Parental Role—New Trial

03 CRS 56202—Sex Offense—Parental Role—New Trial

03 CRS 56202—Sex Offense—Parental Role—New Trial

03 CRS 56203—Sex Offense—Parental Role—New Trial

03 CRS 56203—Sex Offense—Parental Role—New Trial

03 CRS 56204—Sex Offense—Parental Role—New Trial

03 CRS 56204—Sex Offense—Parental Role—New Trial

03 CRS 56204—Sex Offense—Parental Role—New Trial

03 CRS 56205—Indecent Liberties—New Trial

03 CRS 56205—Indecent Liberties—New Trial

03 CRS 56207—Indecent Liberties—New Trial

03 CRS 56207—Indecent Liberties—New Trial

Judge GEER concurs.

Judge BRYANT concurs in part and dissents in part in a separate opinion.

BRYANT, Judge, concurring in part, dissenting in part.

I concur in the portion of the majority opinion finding no error as to defendant's conviction of five counts of first degree sexual offense and two counts of felonious sexual act with a minor. However, I disagree and therefore respectfully dissent from the majority opinion remanding for a new trial the remaining convictions consisting of eight counts of felonious sexual act with a minor (also referred to as sex offense in a parental role) and four counts of taking indecent liberties with a minor.

The majority opinion acknowledges the trial court did not err in its instructions to the jury as to the charges of sexual offense in a parental role and indecent liberties. The trial court used the pattern jury instructions and distinguished by location each of the counts of sexual offense in a parental role and repeatedly instructed the jury it must find "separate and distinct acts" for each of the counts of indecent liberties.

Nevertheless, the majority, finding merit in defendant's contention that his right to a unanimous jury verdict "was violated because it is unclear which criminal offenses the jury believed he committed", goes on to hold that because "we cannot determine which specific instances of abuse each juror had in mind when voting to convict defendant", defendant must be granted a new trial on eight of the counts of sex offense in a parental role and on all four counts of indecent liberties. The majority seems to draw a distinction between those counts in which the verdict sheets indicate a specific incident (e.g. anal intercourse in the master bedroom) and counts where no other information is listed on the verdict sheets. However, our "statutes do not specify what constitutes a proper verdict sheet[,] . . . [n]or have our Courts required the verdict forms to match the specificity expected of the indictment." *State v. Floyd*, 148 N.C. App. 290, 295, 558 S.E.2d 237, 240-41 (2002). A verdict is deemed sufficient if it "can be properly understood by reference to the indictment, evidence and jury instructions." *State v. Connard*, 81 N.C. App. 327, 336, 344 S.E.2d 568, 574 (1986), *aff'd*, 319 N.C. 392, 354 S.E.2d 238 (1987) (per curiam).

Defendant was convicted of five counts of first degree sexual offense, four counts of indecent liberties and ten counts of felony sex offense in a parental role. The evidence at trial showed that from mid September 2002 (less than one month after the child victim's younger brother was born) until 5 June 2003, the defendant engaged in anal

intercourse with the child victim, his step daughter, as many as fifty (50) times, "anytime he got a chance." According to the child it happened as many as thirty times in the master bedroom and as many as twenty times in the living room. The evidence showed defendant licked his fingers and put them in the child's backside prior to anal intercourse. The evidence further showed the defendant on at least one occasion touched her breast and licked her breast, and at least three times, licked her vaginal area. The jury heard evidence of defendant's statement admitting to engaging in anal intercourse with the victim "at least six times before 5 June 2003," and to licking her vagina "at least two or three times." On 5 June 2003, after the victim's sibling saw defendant "holding" the child victim, the child was taken to the doctor, examined and determined to have anal bruising and anal ulcerations. Fluid found on the back side of the victim's panties was identified as sperm, subjected to DNA analysis, and determined to be that of the defendant.

I would submit that this evidence is more than sufficient to support each and every jury verdict in this case. The majority opinion and some of the cases cited therein seem to suggest that where, as here, the evidence reveals a greater number of separate criminal offenses than there are charges submitted to the jury, there is in essence, a per se violation of defendant's right to a unanimous jury. *See State v. Bates*, 172 N.C. App. 27, —— S.E.2d —— (2005) *temp. stay allowed*, 360 N.C. 537, —— S.E.2d ——, 2005 N.C. LEXIS 861 (2005) and *State v. Lawrence*, 170 N.C. App. 200, 612 S.E.2d 678 (J. Bryant concurring in part and dissenting in part) *temp. stay allowed*, 359 N.C. 640, 615 S.E.2d 662, 2005 N.C. LEXIS 604 (2005). Analyzing criminal cases in this manner would tend to extend the concept of unanimity far beyond what is reasonable for child sexual abuse cases in general and in this case in particular. Here we have a jury that was properly instructed by the court. During deliberations, this jury made only one request for testimony regarding one incident. The jury deliberated less than two hours before reaching unanimous verdicts on nineteen of twenty counts of sexual acts upon the child victim. Absent any indication the jury was confused or misunderstood the trial court's instructions I cannot agree to overturn these unanimous jury verdicts which overwhelmingly appear to be based on the evidence presented at trial and on properly given instructions. The courts properly presume that jurors pay close attention to the instructions of the trial judge in criminal cases and that they "undertake to understand, comprehend, and follow the instructions as given." *State v. Nicholson,*

355 N.C. 1, 60, 558 S.E.2d 109, 148, *cert. denied*, 537 U.S. 845, 154 L. Ed. 2d 71 (2002) (citation omitted). As our Supreme Court has stated, "these instructions, when read as a whole, required a verdict of not guilty if all twelve jurors were not satisfied beyond a reasonable doubt that the defendant engaged in an unlawful sexual act . . . [and there is] nothing in the record indicat[ing] any confusion, misunderstanding, or disagreement among the members of the jury which would indicate a lack of unanimity." *Hartness*, 326 N.C. at 565, 391 S.E.2d at 179.

. . .

In the instant case defendant has failed to show a lack of unanimity in the jury verdicts. There must be more than a "possibility of a non-unanimous verdict" to overturn a unanimous jury verdict. We cannot decide cases based on speculation of what might have been. Perhaps the greatest danger posed by the majority opinion is that it would allow a convicted defendant to speculate on appeal, as to what a jury might have done during the course of deliberations at trial and with no indication the jury struggled with unanimity issues, grant defendant a new trial based on speculation. The burden is on defendant to show prejudicial error in order to have his conviction reversed and a new trial granted. Here, the evidence of record shows the jury was instructed on the law by the trial court, the jury was presented with a total of [20] separate verdicts [] as to three specific types of sexual crimes . . . and in a [very] short time the jury convicted defendant [of 19 of the 20 counts] in unanimous verdicts.

*State v. Lawrence*, 170 N.C. App. at 222, 612 S.E.2d at 691-92 (Bryant, J., dissenting).

Just as in *Lawrence*, I cannot find that a danger of lack of unanimity arises from the verdicts in the instant case. I believe this defendant received a fair trial, free from prejudicial error as rendered by a unanimous jury in open court. I would hold no error as to all convictions in this case, including all counts of Sexual Offense in a Parental Role and Taking Indecent Liberties with a Minor.